

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 21, 2026

**By ECF**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> **Re:**   *United States v. Godfrie Cole*, **24 Cr. 57 (PAE)**

Dear Judge Engelmayer:

The Government respectfully submits this letter in advance of the sentencing of defendant Godfrie Cole, scheduled for April 28, 2026, in the above-captioned case.  As described in more detail below, the defendant participated in a violent armed robbery in the Bronx, New York.  The Government therefore respectfully submits that a sentence at the low end of the Sentencing Guidelines ("Guidelines") range of 63-78 months' imprisonment is sufficient but not greater than necessary.

## I.      Background

### A.  Offense Conduct

On November 30, 2023, the defendant and his co-conspirator violently robbed a convenience store in the Bronx, New York, at gunpoint.

At 10:06 p.m. on November 30, 2023, the defendant and his co-conspirator entered a convenience store located at 4028 Boston Road in the Bronx, New York.  PSR ¶¶ 32-33.  The defendant and his co-conspirator were both wearing masks and blue gloves.  PSR ¶ 33.  The defendant was also wearing a sweatshirt with the words "POLO New York" written across it.  Complaint ¶ 5(e).  A photograph of the defendant and his co-conspirator entering the convenience store is below:



Upon entering the store, the defendant approached a store employee standing behind the counter and pointed his firearm at the employee. PSR ¶ 33. The defendant then struck the employee in the head with his firearm, causing the employee to fall to the ground. PSR ¶ 33. As the employee fell, a scale that was sitting on the counter also fell and hit the employee in the head. PSR ¶ 33. The employee suffered a laceration to the left side of his head, and he was later taken to a hospital to be treated for his injuries. PSR ¶ 33. A photograph of the defendant brandishing his firearm is below:



While the employee lay injured on the ground, the defendant removed $3,000 from the store's register.  PSR ¶ 33.



At the same time, his co-conspirator served as a lookout, pushing a customer to the ground and taking the customer's wallet and belongings.  PSR ¶ 33.  The defendant and his co-conspirator then fled the store and entered a residential building located at 3475 Bivona Street in the Bronx, New York.  PSR ¶ 34.  The defendant was captured on the building's surveillance footage, unmasked and with his face visible, wearing the same blue gloves and sweatshirt he was wearing during the robbery.  PSR ¶ 34.

## II.   Procedural History

On January 30, 2024, the defendant was charged by Indictment with conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951; Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 and 2; and use, carrying, and possession of a firearm, which was possessed and brandished, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), (ii), and 2.

On January 13, 2026, the defendant entered a plea of guilty to Count Two of the Indictment pursuant to a Plea Agreement.  PSR ¶ 1.  In the Plea Agreement, the parties stipulated that the defendant had a total offense level of twenty-five, a criminal history score of two, and was in Criminal History Category II.  Accordingly, the Plea Agreement included a Stipulated Guidelines Range of 63 to 78 months' imprisonment.

The Probation Office, however, concluded that the defendant has a total offense level of twenty-nine, a criminal history score of nine, and is in Criminal History Category VI.  PSR ¶¶ 53, 66-67.  These differences between the Plea Agreement and the Probation Office's calculations are because the Probation Office included in its calculation two youthful offender convictions for robbery in the second degree that were not available to the Government at the time of the plea.  PSR ¶¶ 54-62.  Because the Government does not typically have access to youthful offender convictions, these convictions did not appear in the Plea Agreement and were not accounted for in the Government's calculations of the defendant's offense level, criminal history score, or Criminal History Category.   The Probation Office accordingly calculates the defendant's advisory Sentencing Guidelines range as 151 to 188 months' imprisonment and recommends a sentence of 84 months' imprisonment.  PSR ¶ 111; page 26.  The Government agrees with Probation's Guidelines calculation but, for the reasons described more fully below, submits that a sentence at

the low end of the Stipulated Guidelines range is sufficient but not greater than necessary to achieve the purposes of sentencing.

## III.    Discussion

### A.    Applicable Law

Since *United States v. Booker*, the Guidelines are advisory, providing sentencing courts with a recommendation.  543 U.S. 220 (2005).  *Booker* held that although the Guidelines are not mandatory, courts must "consult" them during sentencing.  *Id.* at 264.  The Guidelines provide "the starting point and initial benchmark" for sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Thereafter, a sentencing judge must consider the seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) relevant policy statements by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. §§ 3553(a)(1)-(7); *Gall*, 552 U.S. at 50 & n.6.

The statute directs judges to impose sentences sufficient to "comply with the purposes of sentencing." This analysis requires the consideration of the following sentencing goals:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) To afford adequate deterrence to criminal conduct;
(C) To protect the public from further crimes of the defendant; and
(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

A sentencing court may consider "any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563-64 (1984); *accord Pepper v. United States*, 562 U.S. 476, 488 (2011). "Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*¸ 337 U.S. 241, 247 (1949).  Sentencing judges regularly consider a defendant's risk of recidivism and failure to be deterred by previous sentences. *See, e.g., United States v. Moore*¸ 17 Cr. 7 (JGK), 2022 WL 934061, at *2 (S.D.N.Y. Mar. 29, 2022).

### B.  A Sentence at the Low End of the Stipulated Guidelines Range is Sufficient But Not Greater Than Necessary

In this case, a sentence at the low end of the Stipulated Guidelines range of 63-78 months' imprisonment is sufficient but no greater than necessary to serve the purposes of sentencing.

*First*, the defendant's conduct in this case was undoubtedly serious. The defendant participated in a violent armed robbery that left an innocent employee injured. Upon entering the store, the defendant approached an employee and pointed a gun at him at close range. That alone is intensely dangerous and frightening conduct, which easily could have resulted in fatal consequences. But the defendant did not stop there. He proceeded to strike the victim in the head with his gun, again placing the victim's life at risk. The defendant hit the victim with enough force that the victim fell to the ground, causing a scale to fall off the counter and hit the victim in the head. Because of the defendant's violent behavior, the victim suffered two serious head injuries and had to be hospitalized. Further, while the victim lay injured on the ground, the defendant chose not to help the injured victim and instead stole thousands of dollars from the cash register. This type of brazen criminal conduct, which terrorized a local business and an innocent employee, warrants a significant sentence.

*Second*, the defendant has an extensive criminal history. Within the past decade, the defendant has repeatedly engaged in violent robberies and has remained undeterred. And before he committed the two robberies for which he was convicted as an adult, the defendant committed numerous offenses as a juvenile. *See, e.g.* PSR ¶¶ 54-60 (detailing multiple prior offenses committed while the defendant was a juvenile, including for theft, throwing a brick through a car window before stealing a wallet and credit cards, and stealing a victim's purse). On May 18, 2018, the defendant was convicted of two counts of robbery in the second degree. During the first of these robberies in 2015, the defendant punched a victim in the face and forcibly stole the victim's property. The victim was left severely injured: he suffered a laceration to his lip, swelling to the side of his head, he lost consciousness, and fell to the ground. The second robbery occurred in 2017. At 4:18 a.m., while on the subway, the defendant stole a portable gaming system from the victim's pocket, and when the victim tried to retrieve his property, the defendant struck the victim in the face. As a result of these convictions, the defendant was sentenced to sixteen months' to four years' imprisonment. Despite these convictions, the defendant's alarming pattern of physically assaulting innocent people, seriously injuring them, and stripping them of their personal belongings continued upon his release from custody.

Less than a year after being released from prison, the defendant participated in an attempted robbery that left yet another victim severely injured. In October 2022, the defendant approached a man seated on an electric bike and pushed the victim off his bike, causing him to fall on his face and suffer physical injuries. When the victim struggled to take possession of his bike, the defendant punched the victim in the face and fled. The defendant was subsequently convicted of attempted robbery in the second degree, and he was sentenced to six months' imprisonment and five years' probation.

Upon release from prison, the defendant once again showed no respect for the law and no regard for his conditions of probation. Rather, while on probation, the defendant committed the instant offense, yet another robbery that left another innocent person injured and left a local business stripped of $3000. In addition to the defendant's startling criminal history, the defendant received more than two dozen disciplinary infractions during his time in federal custody. The defendant's long and serious criminal history is wrought with eerily similar violent conduct repeated across a decade with no sign of deterrence. This history reflects the defendant's clear

lack of respect for the law and the incredible danger he poses to society. A significant sentence in this case is therefore appropriate.

*Third*, the defendant's conduct since his arrest in this case is concerning to say the last. While awaiting the disposition of this case, the defendant has been sanctioned by the Federal Bureau of Prisons ("BOP") at least twenty-five times for conduct including physical altercations, threatening bodily harm, assault, being insolent to a staff member, and indecent exposure. The defendant's repeated troubling conduct both inside and outside of correctional settings is a significant factor weighing in favor of a substantial period of incarceration.

*Finally*, the Government acknowledges the various mitigating factors the defendant raises in his submission, including his troubling childhood injuries and trauma, his struggles with mental health and substance abuse, his youth at the time of his prior convictions, and his difficult experience being incarcerated. The Government also recognizes the letters of support submitted with the defendant's sentencing submission. And the Government's recommended sentence at the low end of the Guidelines range takes into account all of the mitigating factors the defendant cites. But even considering these factors, a significant variance below the Guidelines range to the defendant's requested sentence of 48 months' imprisonment is unwarranted in light of the severity of the offense and the defendant's lengthy criminal record wrought with repeated instances of violent conduct. A sentence of at least 63 months' imprisonment is therefore appropriate considering the history and characteristics of the defendant and the seriousness of the offense.

## IV.    **Conclusion**

For the reasons set forth above, the Government respectfully submits that a sentence at the low end of the Sentencing Guidelines range is necessary for this defendant and would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: ___/s/_____
Brandon D. Harper
Assistant United States Attorney
(212) 637-2209

cc:    Hannah McCrea, Esq.
Siobhan C. Atkins, Esq.